[L. A. No. 3302.   Department Two.—October 1, 1914.]

THE PEOPLE, by U. S. Webb, Attorney-General, on the
Relation of A. A. Hubbard, Respondent, v. LOS AN-
GELES RAILWAY CORPORATION, (a Corporation),
Appellant.

STREET-RAILWAYS — FAILURE TO COMPLETE CONSTRUCTION OF LINE
WITHIN TIME SPECIFIED—FORFEITURE OF UNCOMPLETED PORTION.—
A municipal ordinance, granting to a street-railway corporation a
franchise to build and operate a railway along a designated
route, which fixes a shorter time for the commencement and
completion of the road than that specified in section 502 of the
Civil Code, and which provides that if the road is not completed
and in operation within that time, the franchise shall be forfeited
as to the uncompleted portion, constitutes, as to the part of the
road not completed within the specified time, an abandonment
thereof in writing by the grantee and a consent to such abandon-
ment, in writing, by the governing body of the city, within the
meaning of such code section, and vests in the grantee a franchise
over the portion of the road completed within the time fixed.

ID.—FORFEITURE OF PART OF FRANCHISE—PROVISION FOR BY LAW.—
The law makes provision for the forfeiture of a part of a fran-
chise when the assent of the city authorities granting the fran-
chise and the grantee concur.

ID.—ESTOPPEL OF JUDGMENT—DECISION IN INJUNCTION CASE—WHETHER
WORKS ESTOPPEL IN SUBSEQUENT QUO WARRANTO PROCEEDINGS.—A
judgment in an action brought by such railway company to have
the city enjoined from interfering with the construction of the
road does not estop the company if, in subsequent quo warranto
proceedings by the city to have a forfeiture of both the com-
pleted and uncompleted portions of the road for failure to com-
plete the entire line within the time limited, from asserting a fran-
chise to operate the completed portion of the road, which question
was not necessarily involved and was not adjudicated in the first
action.

APPEAL from a judgment of the Superior Court of Los
Angeles County.   J. P. Wood, Judge.

The facts are stated in the opinion of the court.

Gibson, Dunn & Crutcher, Edward E. Bacon, and Norman
S. Sterry, for Appellant.

Emmet H. Wilson, Amicus Curiae, for Appellant.

John W. Shenk, City Attorney, Albert Lee Stevens, City Attorney, George E. Cryer, and Charles S. Burnell, Assistant City Attorneys, for Respondent.

MELVIN, J.—This action in the nature of *quo warranto* was instituted for the purpose of having a judicial declaration that the defendant was usurping and unlawfully exercising the franchise of maintaining tracks for its street-railway along portions of San Pedro Street in the city of Los Angeles, and that the said defendant had forfeited its right to operate its road or to maintain tracks along any part of the route described in that certain ordinance of the city of Los Angeles known as "Ordinance No. 4240 (New Series)." Judgment was given in favor of the plaintiff, and defendant appeals from said judgment.

The essence of the judgment was that by its failure to complete the construction of its tracks over the entire route described in ordinance No. 4240 within the time prescribed therein and in a later ordinance by which an extension of time was granted, defendant *ipso facto* forfeited its right to maintain tracks upon any portion of said route.

The facts are stipulated and so far as they are necessary to the decision of this case are as follows:

On May 11, 1897, Ordinance No. 4240 (New Series) was passed and it was approved on the same day. It granted to John C. Lynch, his successors and assigns, a franchise to build and operate a line of street-railway along a route "commencing at a point in the east line of Main Street 30 feet north of the north line of the Pico house block, and running thence easterly along the Plaza to the center of Los Angeles Street; thence southerly on Los Angeles Street to First Street; thence easterly on First Street to San Pedro Street; thence south along San Pedro Street to its intersection with Stanley Avenue; thence southerly along Stanley Avenue to the southern city boundary." Section 4 of the ordinance was as follows: "The above rights and privileges are granted upon the express condition that work on said road shall be commenced within six months, and the whole thereof completed within eighteen months from the date of the passage of this ordinance. It being understood that if said road is not fully completed and in operation within said time, then this franchise shall be forfeited as to the portion

thereof uncompleted; and in case any portion of said road is unused and unoperated with reasonable service for one month, then that part of the road shall become forfeited and become the property of the city." By section 6 it was provided that the grantee of the franchise on and after the completion of the road "or any portion thereof and the operation of the same," should issue and receive transfers to and from its other lines. The time for completing the work was extended by Ordinance No. 5381 (New Series) to expire May 12, 1899. No part of the road described in Ordinance No. 4240 was completed prior to the date last mentioned except that portion along San Pedro Street between Fifth and Thirtieth streets, a distance of about one mile. This road was regularly operated by Lynch and his successors until May 1, 1903, when defendant's predecessor in interest, the Los Angeles Railway Company, commenced the extension of its road on San Pedro Street and Park Avenue (the new name for Stanley Avenue) from Thirtieth Street to the terminus described in Ordinance No. 4240. A portion of this extension was actually constructed when the city, acting through its agents, prevented further prosecution of the work. Thereupon the Los Angeles Railway Company commenced an action against the city of Los Angeles to restrain that municipality from interfering with its work of construction and operation of its road south of Thirtieth Street and under protection of a restraining order completed its tracks to the terminus described in Ordinance No. 4240.

On the hearing in the superior court of the railroad company's action, the restraining order was dissolved and judgment was entered for the defendant. Plaintiff appealed, and, pending the determination of the cause on appeal, entered into a contract with the city whereby, on payment of a certain monthly sum, the railroad company was permitted to occupy and use that portion of the route south of Thirtieth Street on San Pedro Street and on South Park Avenue north of Slauson Avenue. On appeal the judgment of the superior court was affirmed. (*Los Angeles Railway Co.* v. *City of Los Angeles,* 152 Cal. 242, [125 Am. St. Rep. 54, 15 L. R. A. (N. S.) 1269, 92 Pac. 490].)

It was also stipulated that the portion of the road first constructed under the authority of Ordinance No. 4240 had always been operated as a part of a general system and that

by transfers and without extra charge passengers living near
parts of the proposed route upon which no tracks were con-
structed prior to May 12, 1899, were taken to points con-
veniently near to their places of residence. Neither the city
nor its agents ever declared the franchise granted by Ordi-
nance No. 4240 was forfeited until the city attorney in the
answer filed by him in the suit by the railway company
against the city asserted that such forfeiture had occurred.
After the decision of the railway company's suit in the su-
perior court, the city attorney suggested that an action be
commenced by the city for the purpose of forfeiting the
entire franchise sought to be granted by Ordinance No. 4240,
and he drew a recommendation and resolution to that effect
which he presented to the city council. This was referred to
the appropriate committee and that committee rendered the
following report:

"It appears to your committee that at the time this fran-
chise was granted in 1897 there must have been grave doubts
in the minds of the mayor and council, as well as Mr. John
C. Lynch, as to the propriety of building this road to the
extreme southerly limits within the limit specified as a busi-
ness proposition, for they, at that time, by mutual consent,
inserted the provision in the franchise, that has never before
nor since been incorporated in a railway franchise in this city,
that if the whole line was not completed within the time limit,
the franchise for only that portion uncompleted should be
forfeited. Your committee believes that regardless of any
advantages that we might attempt to avail ourselves of
through the courts in the way of technical law points in the
state code bearing on this case, there was a very clear and
definite understanding between the city through its officials
on one side and the purchaser of this franchise on the other,
as to the conditions expressed therein, and one which it is
the plain duty of this council as their successors to carry out.
We therefore recommend that this council shall decline at
this time to instruct the city attorney to take any legal action
with a view to seeking a forfeiture of the franchise in ques-
tion."

On November 6, 1905, the committee's report was adopted
by the city council and spread upon the minutes of its meet-
ing of that date.

Shortly after the decision of this court in *Los Angeles Railway Co.* v. *City of Los Angeles,* the said company made application in writing to the city council to advertise for sale a franchise for a street-railway over the portion of the route of the former franchise which had been in controversy in the injunction suit. The city attorney reported against such a course, stating his opinion that the whole of the franchise sought to be granted by Ordinance No. 4240 had been forfeited. However, the city council proceeded to advertise and sell the franchise for a street-railway commencing at Thirtieth and San Pedro streets and running thence over the southerly portion of the route designated in said Ordinance 4240. This franchise was duly granted by Ordinance No. 16320 and was assigned to defendant herein, but upon a referendum to the electors of the city the ordinance was rejected.

The stipulation contains reference to great expenditures made by the defendant and its predecessor in the way of taxes, paving, reconstruction of tracks, etc., induced by a belief, fostered by the conduct of the city, that a franchise had been regularly and effectively granted by Ordinance No. 4240 (New Series) to the railway company to occupy that portion of San Pedro Street between Fifth and Thirtieth streets.

Appellant's first contention is that its demurrer should have been sustained because of the provisions of subdivisions 1 and 2 of section 340 of the Code of Civil Procedure and of section 343 of the same code, but we need not discuss this matter because we are of the opinion that on the merits the judgment ought to be reversed.

Appellant insists that the franchise ordinance together with the written acceptance thereof, which was shown by the stipulation of facts, constituted an abandonment in writing by the grantee and a consent to such abandonment, in writing, by the governing body of the city within both the letter and intent of section 502 of the Civil Code. We fully agree with this contention. Section 502 of the Civil Code is in part as follows:

"Work to construct the railroad must be commenced in good faith within not more than one year from the date of the taking effect of the ordinance granting the right of way, and said work must be completed within not more than three years after the taking effect of such ordinance; provided,

that the governing body of such municipal corporation at the time of granting said right of way shall have the power to fix the time for either the commencing or completion, or both, of said work; not, however, to a time less than six months for commencing, and not less than eighteen months for completing the same. A failure to comply with either of the foregoing provisions of this section, or with either of the provisions of the ordinance granting said right of way, works a forfeiture of the right of way, and also of the franchise, unless the uncompleted portion is abandoned by the person or corporation to whom said right of way is granted, with the consent of the authorities granting the right of way, such abandonment and consent to be in writing.''

Under the authority of this section the city council fixed a shorter time for the commencement and completion of the work than that named in the statute itself. This right to shorten the time is correlative with the power of the city council to waive forfeiture of a franchise. No time is fixed by the statute for the abandonment of the uncompleted part of the right of way and the acceptance by the city of the finished portion. We can easily imagine conditions in which such abandonment might be sought during the progress of the building of the railroad by a grantee of a franchise who would foresee the impossibility of finishing the work on time, and we can also see that in proper cases a city council would grant the requested relief. So, too, a grantee having used his best efforts during all of the time allowed in the ordinance for the completion of the work might with propriety, in some cases, ask and obtain permission to abandon the uncompleted portion of the right of way theretofore given him and thereby retain the franchise for that part over which his tracks had been constructed. But why may not a city council in advance of any construction of tracks at all, agree with the grantee that all parts of the right of way not used at the expiration of the time limit prescribed by the ordinance shall be abandoned and that the franchise shall be in full effect as to the constructed portion? The franchise and the written acceptance thereof constituted a contract between the city and Mr. Lynch. He had paid five thousand dollars for the privilege granted. The city said, in effect, ''If you will be satisfied with less territory for your tracks than we have allowed you, then we shall be satisfied with the more limited service, pro-

vided you will abandon the unused portion of your right of way.'' And they contracted accordingly. The same result might have been obtained by the grant of a number of franchises for short spaces along the proposed route of the railway each with the same time limit. At the expiration of the prescribed period all of these spaces upon which tracks were built and in use would be protected by franchises, and the right of way over the unused spaces would have lapsed. The city council chose to adopt the more logical and direct method permitted by section 502 of the Civil Code.

But respondent insists that the judgment in the case of *Los Angeles Railway Company* v. *City of Los Angeles* concludes and estops appellant in all matters urged as a basis of its present right to occupy any portion of the route described in the original ordinance. It is true that in the complaint in that action the railroad company averred its ownership of the entire franchise over the designated route and defendant therein, the city of Los Angeles, denied the company's ownership of a franchise to operate its road over any part of the said right of way by reason of the failure of Lynch or his assigns to complete the work of constructing the road. But this pleading did not necessarily put in issue the ownership of the entire franchise. The decision by the superior court which was affirmed by this court, referred only to the pretended right of the railway company to extend its tracks along San Pedro Street south of Thirtieth Street—territory upon which it had failed to build during the period delimited by the two ordinances. Whether or not the railway company possessed a vital franchise to operate its road between Fifth and Thirtieth streets on San Pedro Street was a question not necessarily involved in that litigation. Certainly it was not a question which was there decided. We must hold, therefore, that the decision of this court in volume 152 of the California Reports, did not estop the railway company from asserting ownership of a franchise to operate its road between Fifth and Thirtieth streets on San Pedro Street. Respondent cites authorities to the effect that where the subject matter of two litigations is the same the second is governed by the decision of the first. There can be no doubt of the existence of this rule but we cannot concede that the forefeiture of the *entire* franchise was involved in the former action. Respondent quotes the following language from the decision in the

former case (152 Cal. 244, [125 Am. St. Rep. 54, 15 L. R. A. (N. S.) 1269, 92 Pac 491]: "The question whether the superior court erred in dissolving the temporary injunction and denying a permanent injunction depends mainly upon the further question whether the franchise of plaintiff was forfeited *ipso facto* by its failure to complete the road within the time limited by the grant. The respondent claims that it was so forfeited under the provisions of section 502 of the Civil Code." But we must remember that the court was considering not the long-constructed, long-used, and long-taxed portion of the road, but that part which was built long after the expiration of the time granted by the city council. Counsel for respondent insist that the quoted language applies to the entire franchise and must necessarily so apply because, as they assert, "the law makes no provision for a forfeiture of a part of a franchise"; but the law *does* make just such provision when the assent of the city council and the grantee concurs. In the case from which counsel quote there was no question of the interpretation of the *contract* between the city and Mr. Lynch whereby it was agreed that both parties would assent to a franchise covering the part of the road which should be built during the time limit granted by the council. This court had its attention directed to that part of the franchise which, in any view of section 502 of the Civil Code, must be regarded as forfeited for nonuser. This is shown by the following language in the opinion: "It follows from this conclusion that the plaintiff having forfeited its right to use or occupy the street which it had left vacant for four years after the expiration of the time limited for the completion of its road, had no more right to lay its track there than one who had never been granted a right of way."

But respondent makes the point that Ordinance No. 5381 (New Series) extended the time of the city's grantee only for the "completion of said railway lines," not for the completion of such part as the grantee might see fit to build. To hold that the quoted language destroyed the privilege granted by Ordinance 4240 (New Series) of abandoning the unused part of the route, would be to give to it a narrow and technical meaning surely not contemplated by its authors. The purpose of the latter ordinance was merely to amend the earlier one in the matter of time and nothing else. Indeed, that was the only particular in which it could, under the statute,

amend the earlier enactment. To be sure the ordinance specified the time for the "completion" of said lines, but their construction over a part of the contemplated route was clearly a "completion" in view of the terms of the original agreement.

There can be no doubt that the attempt, on the part of appellant's predecessor, to build its road on San Pedro Street south of Thirtieth Street was inconsistent with the claim now made that the corporation had abandoned that portion of its franchise, but the fact that the predecessor of one of the parties now in interest committed an unlawful act would not justify a construction of the ordinance contrary to its plain terms. If a valid title to the franchise for the road constructed prior to May 11, 1899, vested at once in the grantee, that title could no more be divested by an unlawful attempt four years later to build on the abandoned right of way than it could be by an effort of that corporation to lay its tracks upon some totally different street upon which it never had any color of right to place its rails.

Our conclusion that by the very terms of Ordinance No. 4240 (New Series) and the written acceptance thereof the grantee obtained a franchise for the portion of the road constructed within the time limit, makes it unnecessary to examine appellant's contention that the city by its conduct in taxing the railroad company, by requiring the corporation to construct a portion of the paving along the line of its tracks, by its own interpretation of the original ordinance (exhibited in the adoption by the city council of its committee's report), and by numerous other acts, estopped itself from attacking the franchise of appellant. We may say in passing, however, that these considerations appeal strongly to our sense of equity.

The judgment is reversed with instructions to the superior court to enter a judgment confirming appellant's franchise in and to that part of its road on San Pedro Street between Fifth and Thirtieth streets in conformity with the provisions of Ordinance No. 4240 (New Series) of the city of Los Angeles.

Henshaw, J., and Lorigan, J., concurred.

Hearing in Bank denied.